UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN F., o/b/o BRENDAN F.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:22-CV-00913 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Kevin F., on behalf of Brendan F. ("Plaintiff"), brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB").[1]  (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Dkt. 8; Dkt. 9), and Plaintiff's reply (Dkt. 10).

For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 9) is denied.

---

[1] On December 4, 2024, Kevin F. filed a motion for substitution in light of Brendan F.'s passing on April 22, 2024.  (Dkt. 13).  On April 28, 2025, the Court granted the motion for substitution.  (Dkt. 16).

## BACKGROUND

Plaintiff filed his application for DIB on October 24, 2019. (Dkt. 6 at 23, 226-27).[2] In his application, Plaintiff alleged disability beginning on June 13, 2001. (*Id.* at 23, 226). Plaintiff's application was initially denied on May 6, 2020. (*Id.* at 23, 106-117). A telephone hearing was held before administrative law judge ("ALJ") Mary Mattimore on August 5, 2021. (*Id.* at 42-67). On September 23, 2021, the ALJ issued an unfavorable decision. (*Id.* at 23-34). Plaintiff requested Appeals Council review, and his request was denied on September 28, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 7-12). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[2]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

II.   **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff last met the insured status requirements on December 31, 2007, and had not engaged in substantial gainful work activity during the period from his alleged onset date of June 13, 2001, through his date last insured of December 31, 2007. (Dkt. 6 at 25).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: thoracic compression fracture, L4-5 disc herniation, and discogenic pain/thoracic pain. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of diabetes mellitus and depression were non-severe. (*Id.* at 25-26).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 26). The ALJ particularly considered the criteria of Listings 1.15 and 1.16 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> he could occasionally stoop, kneel, crouch, crawl, climb stairs and ramps; could never climb ladders, ropes, or scaffolds; and was limited to simple, routine work and simple workplace decisions.

(*Id.* at 40). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 32).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of router, assembler small products, and storage facility rental clerk. (*Id.* at 33). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 34).

## II.     Remand for Further Administrative Proceedings is Required

Plaintiff asks the Court to reverse or, alternatively, to remand this matter to the Commissioner, arguing that: (1) the ALJ failed to properly reconcile the RFC with medical opinion evidence and (2) the ALJ erred by relying on stale medical opinions. (Dkt. 8-1 at 13-19). For the following reasons, remand for further administrative proceedings is required.

### A.     Assessment of Opinion Evidence

Plaintiff's first argument is that the ALJ erred in her assessment of the medical opinion of Andrew Cappuccino, M.D. Specifically, Plaintiff contends that the ALJ found Dr. Cappuccino's opinion persuasive, yet failed to incorporate his opinion on positional changes in the RFC or explain why it was omitted.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision," *id.*, an ALJ is not a medical professional, and therefore [s]he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its

totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id.* at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id.*

Plaintiff had an initial consultation with Dr. Cappuccino, a spinal surgeon, on March 17, 2005. (Dkt. 7 at 724-27). Plaintiff advised Dr. Cappuccino that he had pain in the intrascapular area on the curvature of the thoracic spine, ranging from 4/10 to 8/10. Plaintiff also indicated severe mechanical low back pain but without any lower extremity paresthesias. Plaintiff advised Dr. Cappuccino that he was undergoing massage therapy,

and although not engaged in interventional pain management, indicated that recumbency, sitting, standing, massage therapy, and Darvocet helped to relieve the pain. (*Id.*). On examination, Plaintiff had a normal gait, steady station, tenderness over the cervical spine, spasm in the trapezius, and diminished range of motion. Dr. Cappuccino requested updated MRIs of Plaintiff's thoracic and lumbar spine. (*Id.*). On December 21, 2006, Dr. Cappuccino noted that Plaintiff's condition had "markedly worsened," and that Plaintiff sought surgical intervention. (*Id.* at 585-86). Dr. Cappuccino stated that it was his belief that Plaintiff "has remained with a legitimate marked total degree of disability pursuant to his lumbar spine and thoracic injury which transpired on 6/12/01 from the date which he was first seen by our office up until the present time." (*Id.* at 586).

Dr. Cappuccino prepared an opinion on January 31, 2007. (*Id*. at 556-57). He noted Plaintiff's complaints of persistent lower back pain with painful radiation into his left paragluteal region. He indicated that Plaintiff continued to undergo massage therapy once a week with fairly good results, and was also taking insulin, Darvocet as needed, Wellbutrin and nicotine transdermal patches. He noted Plaintiff was working at a part-time job as a computer programmer and was tolerating the job requirements without significant difficulty. Dr. Cappuccino opined that Plaintiff could continue with light duty restrictions which include no repetitive bending, twisting, pushing or pulling activity, no lifting of greater than 20 pounds, and a requirement for frequent positional changes. He noted Plaintiff's continuing intention to proceed with surgical intervention.

The ALJ found Dr. Cappuccino's opinion persuasive, explaining:

On January 31, 2007, Dr. Cappuccino opined that [Plaintiff] continue with light duty restrictions with no repetitive bending, twisting, pushing or pulling

>   activities, and he should not lift greater than 20 pounds and he should be allowed frequent positional changes. (28F at 87). This opinion is persuasive because it gives detailed functional parameters supported by treatment records and is consistent with the overall record.

(Dkt. 6 at 31).

Plaintiff highlights the fact that despite finding Dr. Cappuccino's entire opinion persuasive, the ALJ nevertheless failed to include all of the identified limitations contained in the opinion in the RFC. Specifically, although Dr. Cappuccino opined that Plaintiff required frequent positional changes, the RFC does not contain this limitation and nowhere in the decision does the ALJ explain the omission of a requirement for frequent positional changes. Plaintiff argues and the Court agrees that this is error.

As a threshold matter, of course the RFC need not mirror any one medical opinion. *See Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)); *see also Jaret B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0896-CJS, 2024 WL 1014051, at *6 (W.D.N.Y. Mar. 8, 2024) ("Moreover, an ALJ is not required to adopt every limitation contained in a medical opinion even where he finds the opinion overall to be persuasive." (citation omitted)); *Barry J. v. Comm'r of Soc. Sec.*, 725 F. Supp. 3d 312, 323 (W.D.N.Y. 2024) ("Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions."); *Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("[J]ust because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not

mean there was an error."); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y. July 13, 2022) ("[A]n RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion.").

But while the ALJ was under no obligation to incorporate all portions of Dr. Cappuccino's opinion simply because she found the opinion to be persuasive, if there were portions of the opinion that she was rejecting, she was obligated to explain her reasons for doing so. *See Tammy B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-798-JJM, 2025 WL 2701326, at *4 (W.D.N.Y. Sept. 23, 2025) ("Plaintiff is correct that, generally, 'when an ALJ adopts only portions of a medical opinion, he or she must explain why the remaining portions were rejected'" (quoting *Julianne E. v. Comm'r of Soc. Sec.*, No. 21-cv-0538-FPG, 2023 WL 3316580, at *2 (W.D.N.Y. 2023))); *Jaret B.*, 2024 WL 1014051, at *7 ("However, where an ALJ makes an RFC finding that conflicts with a medical opinion, the ALJ must explain why the conflicting opinion was not adopted."); *Kevin Thomas C. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1037 (CFH), 2022 WL 539392, at *5 (N.D.N.Y. Feb. 23, 2022) ("The ALJ did not reconcile how she was 'persuaded by Dr. Ganesh's opinion' with plaintiff's RFC that does not include carrying, pushing, or pulling limitations."); *Badaszewski v. Comm'r of Soc. Sec.*, No. 18-CV-796-FPG, 2020 WL 486376, at *3 (W.D.N.Y. Jan. 30, 2020) ("Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions." (citing *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015))); *DiFrancesco v. Comm'r of Soc. Sec.*, No. 18-CV-376-FPG, 2020 WL 467720, at *3 (W.D.N.Y. Jan. 29, 2020)

(concluding that ALJ erred where, "despite acknowledging [the medical source's] opinion about [claimant's] need to use a cane for balance, the ALJ failed to incorporate those findings into the RFC and did not explain his decision for failing to do so, as required").

There are circumstances under which "an ALJ's failure to provide a clear explanation on this point may not require reversal if the Court can glean the rationale for the ALJ's decision not to adopt the conflicting opinion." *Jaret B.*, 2024 WL 1014051, at *7. Here, while the Commissioner proffers some generalized arguments to support the ALJ's omission of the positional change limitation, they amount to speculative reasons that cannot be found in the ALJ's decision. The caselaw is clear that the Court cannot affirm the ALJ's decision based on "a *post hoc* rationalization that is not apparent from the face of the ALJ's decision." *Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept . . . counsel's *post hoc* rationalizations for agency action." (quotation omitted)).

In this case, not only did the ALJ not discuss his reasoning for omitting Dr. Cappuccino's opinion regarding a requirement for frequent positional changes, but none of the other medical opinions in the record contained or discussed a limitation for positional changes. In other words, this is not a case where the particular limitation was discussed in connection with an assessment of other medical opinions or in another part of the decision; rather, it was not discussed at all. As a result, the Court is unable to discern the basis for the ALJ's determination or able to meaningfully assess whether this omission could have been outcome-determinative in the ALJ's conclusion on the ultimate question of disability. Accordingly, this amounts to an error that warrants remand. *See Jaret B*, 2024 WL

1014051, at *8 ("In sum, there is an obvious discrepancy between the RFC finding and two medical opinions which the ALJ found to be persuasive, and the Court cannot glean the ALJ's rationale from the rest of his decision."). Accordingly, remand is required on this basis.

### B.     Plaintiff's Remaining Argument

As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings,

and the Commissioner's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

    O ORDERED.

                                                         ELIZABETH A. WOLFORD
                                                         Chief Judge
                                                         United States District Court

Dated: September 30, 2025
       Rochester, New York